6645

CLOY v. WESTERN UNION TELEGRAPH CO.

1. TELERGAPH COMPANIES.—From telegram to wife from husband: "We got left, go to your father's tonight, will be on next train," the company could infer failure to deliver before night would cause the wife to be at home a part of the night without protection, and to drive in the night time from her home to that of her father, alone through the forest.

2. IBID.—ISSUES.—As a matter of law the Court cannot say, under the facts here, driving through the forest with her infant at night was the voluntary act of the wife.

3. IBID.—PUNITIVE DAMAGES.—There being evidence here, uncontradicted, of an effort to deliver, and no evidence of wilfulness, and no evidence that defendant's agent could have secured an earlier delivery by using all the fee charged for that purpose, the verdict for $850— *held,* excessive as plaintiffs are not entitled to punitive damages.

Before GAGE, J., Barnwell, Fall Term, 1907. Reversed.

Action by Lois Cloy, and her husband, D. R. Cloy, against the Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Mr. Jno. R. Bellinger,* for appellant, cites : *Telegraph companies are only liable for damages naturally resulting from the negligent act, and in the contemplation of the parties:* 53 S. C., 410; 73 S. C., 520; 76 S. C., 301. *Defendant is not liable for drive of wife in the night, as that was her own voluntary act:* 69 S. C., 539; 75 S. C., 208, 355. *Question of punitive damages should not have been sent to the jury:* 75 S. C., 208; 61 S. C., 71; 68 S. C., 89; 65 S. C., 11; 70 S. C., 423; 65 S. C., 437; *Butler* v. *Tel. Co.; Cason* v. *Tel. Co.*.

*Messrs. Davis & Best,* contra, cite: *The message itself was notice of the consequences of non-delivery:* 72 S. C., 294.

September 9, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This case was tried at the fall, 1906, term of Court for Barnwell County. It appears that D. R. Cloy, one of the plaintiffs herein and husband of Lois E. Cloy, having been on a trip to Savannah wished to return to his home near Estell, S. C., on the 25th day of September, 1905, but was left by the train. Knowing that Mrs. Cloy would be expecting him, he telegraphed her the following message, which arrived at Estell about 2:30 o'clock: "We got left, go to your father's tonight, will be on next train."

Plaintiffs lived seven or eight miles from Estell and in order to secure a prompt delivery of the message, plaintiff, D. R. Cloy, in addition to the regular charge, paid the defendant company one dollar, the amount demanded by the agent for delivery. The message was not delivered until about eight o'clock that evening. The complaint alleges that the delay was wilful and wanton and as a result thereof,

"the plaintiff, Lois E. Cloy, was left at home alone with her infant child, in the country, isolated from friends or any one near enough to protect her; whereby she was frightened and worried to such an extent that she was compelled to leave her home and drive three miles in the dark alone with her infant child to the house of her father, through the forest; and by reason of all the facts hereinbefore set forth, the said Lois E. Cloy suffered great bodily pain, fear, mental anguish and anxiety to her damage nineteen hundred and fifty dollars."

A motion was made to strike out this language from the complaint on the ground that such results were not in the contemplation of the parties. The motion was refused, Judge Gage holding that the language "Go to your father's tonight" was at least sufficient to warn the company that such results would follow from a failure to deliver the telegram. A motion for a nonsuit as to punitive damages was likewise refused. The jury found a verdict of eight hundred and fifty dollars for the plaintiff. The defendant appeals.

The first six exceptions relate to the refusal to strike out. We are of the opinion that it was not error to refuse to strike out the language above quoted. It might have been proper to have stricken out that portion of the allegation which related to plaintiff's child had the motion been so directed, but as defendant sought to strike out the whole allegation, some of which was proper, it was not error to refuse the motion as a whole. The telegram containing the words, "Go to your father's tonight," put it clearly within the contemplation of the parties as one of the objects of the telegram that plaintiff would on receipt of the message seek the protection of her father's home as bidden by her husband. Hence the propriety of the allegation that in consequence of the delay in delivering the telegram, plaintiff was compelled to leave her home and drive in the dark to the house of her father. The fact that the drive was to be in the night was to be anticipated as a natural result of the fail-

ure to deliver the message before night and the defendant's knowledge that plaintiff was expected to go to her father's house that night, necessarily included knowledge that she must go the necessary distance and along the proper road lying between the points indicated. Going through the forest along the road was but a necessary incident of the journey contemplated by the message. Moreover, the complaint, in the portion sought to be stricken out, alleged that by reason of the failure to deliver the message promptly, plaintiff was compelled to spend a part of the night alone, isolated from friends or any one near to protect her, which caused her mental suffering, in other words, that a reasonable delivery of the message as contemplated would have enabled her to reach her father's house before night and thus have relieved her of the fear and anxiety involved in being in her home in the country at night without protection.

Speaking generally, whatever injury or mental suffering naturally and proximately resulted to the plaintiff by reason of the delay in delivering the message was a proper matter for allegation and proof. To strike out the allegations in question would deprive plaintiff of any right to recover for mental anguish.

As regards the second question raised we do not think this Court can, as a matter of law, say that plaintiff's drive through the forest in the dark alone with her infant, was her own voluntary act and that her fear and anguish arising therefrom was the result of her own conduct, for which the defendant is not responsible. It is the duty of one affected by the negligent act of another to exercise ordinary care in using reasonable means at hand for the purpose of minimizing or averting the consequences of such negligence. But in this case it is not a necessary inference from the undisputed facts that plaintiff negligently failed in this regard. Plaintiff's father living three miles distant was her nearest natural protector, and in addition to the filial instincts prompting her to go to him was the direction of her husband to go there. It is true that Mr. Paul Allen lived at

a distance by road from her house, variously estimated by the witnesses as from a half mile to a mile, thought by plaintiff to be a mile, and sent word by a negro boy named Tillman, bearing the telegram to let him know if there was anything he could do for her; but plaintiff's husband had been living in the community only a short while and there is no evidence (beyond the inconsequential testimony that Allen and Cloy sometimes brought each other's mail from the postoffice at Seminole), tending to show such confidence and friendship between herself and husband and Mr. Allen as beyond question should have induced her to go to his home or accept his company or escort with the uncertainty and anxious delay involved in any event, in preference to setting out alone without delay for her father's home. The night being dark, she provided herself with a lantern, she probably knew the way well, the road was good and the weather propitious, so it was not unreasonable for her to suppose that she could reach her father's home in about an hour, and that it would be the best course to go at once and alone. At any rate, it was for the jury to say under all the circumstances, whether in the dilemma brought upon her by the delay of delivering the telegram, she negligently failed to minimize or avert the consequences of such delay.

As it is not disputed that there was some evidence tending to show negligence on the part of the defendant, and as there was some evidence tending to show a few hours' mental anxiety and suffering on the part of the plaintiff, in consequence of such negligence, a verdict based upon the the idea of a fair and just compensation for the injury would have been unassailable in this Court under the exceptions. But the verdict for $850 is manifestly largely punitive and several exceptions involve the question whether there was any evidence tending to show wilful misconduct on the part of the defendant.

We look in vain for anything in the testimnoy tending to show a reckless or wanton disregard of duty on the part of defendant.

The plaintiff testified that the message was delivered to defendant's agent at Savannah, between twelve and one o'clock on September 25th.  It appears that some time was consumed in an effort to find out if the agent at Estell could procure a messenger to deliver the telegram at plaintiff's home, about eight miles in the country, and after hearing from the Estell agent the Savannah agent agreed to deliver the message for one dollar in addition to the ordinary rate for delivery at Estell.  A memorandum on the message blank stated that it was received at the Savannah office at 2:30 P. M.  The agent at Estell applied to Mr. Peeples, who conducted a livery business, to deliver the message, but he could not as his horses were all out.  The Estell agent was informed by Mr. Peeples that the quickest way to get the message out would be by the mail boy.  There was also no testimony that any other means of delivery was available. The defendant's agent employed Wallace Hays, the mail boy, to carry the message and deliver it to Mr. Dickenson, postmaster at Seminole, which was six or seven miles from Estell, with one intervening office to serve, with request that he get it out to Cloy's with his mail.  The mail boy arrived at Seminole a little before sundown and delivered the telegram to the postmaster.  About a half an hour afterwards the postmaster delivered the telegram to Mr. Solomons, who carried it to Mr. Allen's, and being unwell, he stopped there, and Mr. Allen sent the telegram on by a negro boy, who delivered it to the plaintiff at about eight o'clock.  Here certainly was undisputed evidence of some effort to deliver, and the case clearly does not fall within that class of cases which permits an inference of wantonness from long delay without explanation or effort to deliver.

The fact that defendant's agent paid the mail boy only twenty-five cents for his services, when the company charged one dollar for the special delivery, is referred to by respondent as a circumstance showing wantonness in failing to deliver in time, but it must be remembered that the delivery was not to be completed by the mail boy, for after the mess-

age reached Seminole, it remained to be sent on by others acting for the company for whom compensation would have to be provided by the company if demanded. The mail boy regarded twenty-five cents as adequate compensation for his services, no doubt, because he was going to Seminole anyway, and could carry the message that far with little or no inconvenience.

There is no foundation in the testimony for the suggestion that defendant's agent wilfully misappropriated the remaining seventy-five cents, and there is nothing to show that if the whole of the one dollar had been paid to the mail boy the message would have been delivered more promptly. When the company made the charge of one dollar for the special delivery, it was doubtless in contemplation that a team would have to be hired, as the effort to get a conveyance from the livery stable keeper showed. We fail to see how this circumstance could affect the question of wilfulness with respect to the delivery of the message. There was no evidence that defendant's agent had opportunity to secure a speedier delivery of the message by using the special fee for that purpose and wantonly failed to do so. We, therefore, sustain the exceptions raising this question.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.